[Cite as *State v. Miree*, 2022-Ohio-3664.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 110749 |
| v. | : | |
| JAIDEE MIREE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
AND REMANDED
**RELEASED AND JOURNALIZED:** October 13, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-649123-C

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Mahmoud Awadallah and Nora Bryan,
Assistant Prosecuting Attorneys, *for appellee.*

Law Office of Timothy Farrell Sweeney and Timothy F.
Sweeney, *for appellant.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Jaidee Miree ("Miree") appeals his convictions of murder, felonious assault, improperly handling firearms in a motor vehicle, involuntary manslaughter, and tampering with evidence. Miree contends that his bindover from

juvenile court was unsupported by the evidence; that the trial court erred in instructing the jury on self-defense; that the trial court erroneously admitted prejudicial evidence; that the trial court erred in denying his motion for a mistrial; that his convictions of murder, involuntary manslaughter, and felonious assault were based on insufficient evidence and against the manifest weight of the evidence; that he received ineffective assistance of counsel; and that his sentence was contrary to law and violated his constitutional rights. After a thorough review of the facts and applicable law, we affirm in part, vacate in part, and remand to the trial court.

## I. Factual and Procedural History

{¶ 2} On June 16, 2019, Ramses Hurley ("Hurley"), a 19-year-old male, was ejected from the backseat of a moving vehicle and left behind in a pool of his own blood on South Moreland Boulevard in the Buckeye-Shaker neighborhood of Cleveland, a few feet from his home. Hurley's body contained numerous "road rash" abrasions indicating that his body had likely been dragged along the road. He was pronounced dead later that day. The medical examiner observed blunt-force injuries to Hurley's head and neck and determined that the manner of death was a homicide. These specific facts are nearly certain based upon video surveillance and available scientific evidence.

{¶ 3} The events occurring in the vehicle prior to Hurley's death are significantly less certain. What occurred in that vehicle was almost exclusively provided by Miree's codefendants: the driver, Trinity Campbell ("Campbell"), and

backseat passenger, Desmond Duncan ("Duncan"), whose versions of the events differ considerably.

{¶ 4} Miree, 17-years-old at the time of the offense, was charged in the juvenile court with four counts: aggravated murder with firearm specifications; aggravated robbery with firearm specifications; felony murder with the underlying offenses of either aggravated robbery and/or felonious assault with firearm specifications; and felonious assault with firearm specifications. His case was transferred to the Cuyahoga County General Division, and a grand jury indicted Campbell, Duncan, and Miree on 11 counts.

{¶ 5} The charges against Miree were aggravated murder in violation of R.C. 2903.01(B) with firearm specifications (Count 1); felony murder in violation of R.C. 2903.02(B) with underlying offenses of felonious assault and/or aggravated robbery with firearm specifications (Count 2); aggravated robbery in violation of R.C. 2911.01(A)(3) with firearm specifications (Count 3); aggravated robbery in violation of R.C. 2911.01(A)(1) with firearm specifications (Count 4); felonious assault in violation of R.C. 2903.11(A)(1) with firearm specifications (Count 5); felonious assault in violation of R.C. 2903.11(A)(2) with firearm specifications (Count 6); improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) with firearm specifications (Count 7); involuntary manslaughter in violation of R.C. 2903.04(A) with firearm specifications (Count 8); tampering with evidence in violation of R.C. 2921.12(A)(1) (Count 9); and having weapons while under disability in violation of R.C. 2923.13(A)(2) (Count 11).

{¶ 6} Campbell testified at trial that prior to Hurley's death, she picked up Miree intending to purchase marijuana from Hurley. Since this was Campbell's first time making a purchase from Hurley, she wanted Miree, a friend of two to three months, to accompany her. Allegedly, none of the defendants knew Hurley prior to this encounter. Before arriving at Hurley's home, Miree instructed Campbell to pick up two of his friends, Duncan, and an unknown male who was referred to as "B.J." throughout the course of this case. During trial, Campbell testified that B.J. brought guns into the car and supplied one to Miree. Campbell claimed she never met either of these individuals, and in her first recitation of the events to Sergeant Aaron Reese[1] of the Cleveland Police Department, she neglected to mention that Duncan was also an occupant of the vehicle.

{¶ 7} At trial, Campbell's review of the events suggested that she realized that her codefendants wanted to commit a robbery. She stated that before going to Hurley's house, she erroneously directed her G.P.S. to her coworker's house, and the vehicle occupants expressed intent to rob the coworker, but the plan fell through. Campbell then testified that before they went to Hurley's home, Duncan jumped into the cargo area of the backseat, displayed a gun, and told her to be quiet. Campbell was not initially forthcoming with details involving a robbery, and we note that one of the defense's theories was that Campbell merely acquiesced to the robbery narrative to appease the police and prosecutor.

---

[1] At the time of the offense, Reese was a detective for the Cleveland Police Department. In 2019, he was promoted to sergeant.

**{¶ 8}** When Campbell's vehicle eventually arrived at Hurley's home, Hurley was finishing a drug transaction with another individual, Emanuel Adams ("Adams"). According to Campbell, Hurley entered the vehicle through the driver's side backdoor and was seated directly behind her. Hurley placed a scale and some marijuana on the center console. According to Campbell's testimony, as she was reaching into her wallet for cash to pay for her portion, Miree grabbed the marijuana from the scale and did not pay for it. Immediately after, Campbell noted that a "commotion" ensued in the backseat. Two gunshots were fired in the vehicle. She observed Hurley holding a gun. She also observed Duncan holding Hurley in a headlock and pointing a gun to his head. Miree began punching Hurley in the head. The backseat door opened, and Hurley was thrown from the vehicle. According to Campbell, as soon as Hurley was out of the vehicle, Miree encouraged Campbell to drive away.

**{¶ 9}** While leaving the scene, Campbell lost control of the vehicle and struck a brick pillar on Griffing Avenue. Campbell testified that Duncan instructed her to leave or else he would "pop" her. When the vehicle was wrested away from the pillar, she dropped the codefendants off at the location where she picked up Duncan, and Miree instructed her to clean the vehicle and urinate on the seats to remove any gunpowder residue. Campbell went home and followed the instructions to clean the vehicle. She placed bullet fragments and shell casings that she recovered from the vehicle in the sewer by her home, which were later retrieved by the Cleveland Police Department. She also smashed her cell phone.

{¶ 10} Duncan's version of the events is significantly different. He testified that he entered the vehicle expecting a ride to the music studio and did not need to purchase any marijuana, so he had his headphones on the entire time. Duncan denied ever needing to, or wanting to, rob Hurley. Instead of being in the cargo area with a gun, Duncan testified that he was right next to Hurley, in the middle of the backseat. Duncan stated that he did not even realize that something was wrong until Hurley pulled out a gun and pointed it towards Miree, and at that point he removed his headphones and attempted to disarm Hurley. He noted that he was concerned because he believed that Miree was shot and hurt. He then testified that he opened the door and pushed Hurley from the vehicle in defense of himself and the other vehicle occupants.

{¶ 11} The following additional evidence was also adduced at trial.

{¶ 12} Adams testified that he remained on scene following his transaction with Hurley, feeling that he had been given a smaller amount of marijuana than he paid for. He intended to confront Hurley about this after Hurley finished transacting with Campbell's vehicle. Instead, Adams became an eyewitness and testified that he had a direct line of sight to the vehicle and saw Hurley's body being thrown from the vehicle and Hurley's fingers being pried off the edge of the door before he struck the ground. Adams remained on scene when the police arrived.

{¶ 13} Lisa Przepyszny, a forensic scientist in the trace evidence department of the Cuyahoga County Regional Forensic Science Laboratory, testified as an expert in trace evidence. Przepyszny offered several significant opinions — that gunshot

residue was found on Hurley's hands and that there were abrasions in the fabric of the clothing that Hurley was wearing that day consistent with his body impacting a rough surface. She also provided information about the bullet trajectories found inside the vehicle and the DNA evidence found on Hurley's clothing and inside the vehicle.

{¶ 14} Cecil Snowden was walking his dog at the time of the incident and testified as an eyewitness. Snowden testified that he heard two gunshots and saw a person coming out of the driver's side of the vehicle.

{¶ 15} Todd M. Barr, M.D. ("Dr. Barr"), testified as an expert in forensic pathology about the autopsy and examination of Hurley's body, noting Hurley's injuries as well as the cause and manner of death.

{¶ 16} Sergeant Reese from the Cleveland Police Department testified regarding his investigation of the case, including details from his interview with Campbell three days after the subject incident.

{¶ 17} The defense called Richard Cerney, a retired police detective, who opined that the subject vehicle could have been preserved for evidentiary examination until after trial was complete.

{¶ 18} The defense also called Curtis Lewis, Duncan's manager with respect to his music career, who testified that Duncan did not need money, nor did he need to rob someone for marijuana.

{¶ 19} Prior to trial, Campbell accepted a plea deal with the state, part of which contained an agreement to testify truthfully at Duncan and Miree's joint trial.

The jury found Miree guilty of felony murder (Count 2), felonious assault (Count 5), improperly handling firearms in a motor vehicle (Count 7), involuntary manslaughter (Count 8), and tampering with evidence (Count 9). The jury acquitted both Miree and Duncan of all firearm specifications.

{¶ 20} Miree received a life sentence "without the possibility of parole for 15 years" on Count 2, which was merged with Counts 5 and 8 for sentencing purposes. Miree received 12 months each on Counts 7 and 9, which were to run concurrent with each other and Count 2. Miree appeals his convictions, assigning nine errors for our review.

> I. The bindover of Miree's case from Juvenile Court to the adult criminal court violated Miree's rights to due process and to confront and cross-examine adverse witnesses, and was not supported by sufficient, reliable, and credible evidence, in violation of U.S. Const., Amends. 5, 6, 14, and Ohio Const., Art. I, §§ 10, 16.
>
> II. Miree was denied due process, a jury determination of his culpability, and a fair trial because the trial court failed to provide jury instructions on lesser-included offenses of reckless assault, reckless homicide, and the F-3 variant of involuntary manslaughter. U.S. Const., Amends. 5, 6, 14, and Ohio Const., Art. I, §§ 5, 10, 16.
>
> III. Miree was denied due process and a fair trial when the trial court failed to properly instruct the jury on the affirmative defenses of self-defense and defense-of-another, improperly relieved the State of its burden of proof, and invaded the jury's province. U.S. Const., Amends. 5, 6, 14, and Ohio Const., Art. I, §§ 5, 10, 16.
>
> IV. The trial court committed prejudicial error, violated the Rules of Evidence, and denied Miree due process and a fair trial when it admitted the video of Campbell's June 19 interview with Det. Reese (SX 406A), because that video contained an unredacted 18-minute segment of the irrelevant, inadmissible, and unfairly prejudicial private meeting between Campbell and her grandmother.

V. The trial court committed prejudicial error, and denied Miree due process and a fair trial, when it refused to grant a mistrial resulting from the State's bad-faith destruction of the crime-scene vehicle prior to trial and before the defense could even examine it.

VI. The trial court committed prejudicial error, and denied due process and a fair trial, when it refused to grant Miree a mistrial after the court's erroneous admission of Duncan's juvenile adjudications.

VII. Miree's convictions of felony murder, involuntary manslaughter, and felonious assault are based upon evidence that is constitutionally insufficient to prove the required felonious assault and/or to disprove self-defense/defense of another, and, in all events, these three convictions are against the manifest weight of the evidence.

VIII. Miree's trial counsel provided prejudicially ineffective assistance in two significant respects, thereby denying Miree's rights under the U.S. and Ohio Constitutions. U.S. Const., Amends. 6, 14; Ohio Const., Art. I, Sections 10, 16.

IX. Miree's mandatory life sentence under [R.C.] 2929.02(B) is contrary to law as imposed and, in any event, any such mandatory life sentence against a juvenile, like Miree, is unconstitutional because it does not permit judicial consideration of youth.

## II. Law and Argument

### A. Juvenile Bindover

{¶ 21} In his first assignment of error, Miree argues that his case was improperly bound over from the juvenile court.

{¶ 22} Miree first argues that he was denied due process during his bindover hearing because Sergeant Reese's testimony was informed by codefendant Campbell, and Campbell was not present at the bindover hearing. Miree claims he should have been able to confront and cross-examine Campbell at the bindover hearing pursuant to his constitutional due process rights.

{¶ 23} This court has previously addressed the nature of juvenile bindover proceedings:

> "'[A] probable cause hearing held before a juvenile court's transfer to adult court is a preliminary, non-adjudicatory proceeding[.]' *Matter of B.W.*, 2017-Ohio-9220, 103 N.E.3d 266, ¶ 18 (7th Dist.), citing *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), fn. 18, and *State v. Carmichael*, 35 Ohio St.2d 1, 7-8, 298 N.E.2d 568 (1973). *Accord State v. Gilbert*, 6th Dist. Lucas No. L-03-1273, 2005-Ohio2350, ¶ 11; *In re A.M.*, 139 Ohio App.3d 303, 308, 743 N.E.2d 937 (8th Dist.2000); [*State v.*] *Whisenant*, 127 Ohio App.3d [75,] 85, 711 N.E.2d 1016 [(11th Dist.1998)]. This proceeding is non-adjudicatory because 'the juvenile court's function is not to determine whether the juvenile is guilty of the charge[,] but is to determine whether there is probable cause to believe the juvenile is guilty.' (Emphasis omitted.) *B.W.* at ¶ 18, citing *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001)."

*State v. Burns*, 8th Dist. Cuyahoga No. 108468, 2020-Ohio-3966, ¶ 74, quoting *State v. Starling*, 2d Dist. Clark No. 2018-CA-34, 2019-Ohio-1478, ¶ 26.

{¶ 24} Nonadjudicatory hearings need not meet the same rigorous standards for admissibility that a trial requires. *Starling* at ¶ 27, citing *Whisenant* at 85. Juvenile bindover hearings are not trials because they do not "'find as a fact that the accused minor is guilty of the offense charged.'" *Iacona* at 93, quoting *State v. Whiteside*, 6 Ohio App.3d 30, 36, 452 N.E.2d 332 (3d Dist.1982). The right to confront witnesses is a trial right. *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

{¶ 25} The law is clear that because of the nature of juvenile proceedings, there is no right to confront witnesses. As a result, we reject Miree's argument that his constitutional right to confront witnesses was violated.

{¶ 26} Miree further argues that his bindover was not supported by sufficient, reliable, and credible evidence. Miree argues that the evidence presented at the bindover hearing, especially by Sergeant Reese, was not credible. Miree points to the evidence adduced at the hearing, including the fact that, at the time, there was no physical evidence of a gun except for one belonging to Hurley; the shots from Hurley's gun almost struck Miree supporting a self-defense theory; witnesses only heard two "pops"; and the surveillance footage that demonstrated the extremely slow speed of the vehicle when Hurley was ejected.

{¶ 27} When reviewing juvenile bindovers, the appellate court is instructed to defer to the juvenile court's "determinations regarding witness credibility, but review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 51. "The 'probable' component of the probable cause determination means that the state must produce evidence that 'raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt.'" *State v. Taylor*, 8th Dist. Cuyahoga No. 106502, 2018-Ohio-3998, ¶ 4, quoting *In re A.J.S.* at ¶ 42.

{¶ 28} The juvenile court found probable cause for all four charges. During the bindover hearing, the juvenile court received photos of the homicide crime scene (which included a bag of marijuana lying near the body), photos of damage to the subject vehicle, Campbell's lineup identification of Miree as a codefendant, and an autopsy report indicating that Hurley's cause and manner of death was homicide

caused by blunt force trauma. Furthermore, Sergeant Reese testified during the hearing, indicating information that Campbell relayed to him that this was a drug deal turned robbery that resulted in Hurley's death. Reviewing all the evidence presented at the bindover hearing, we find that Miree's bindover was supported by sufficient, credible evidence placing Miree at the crime scene as well as evidence supporting Miree's culpability. The first assignment of error is therefore overruled.

## B. Manifest Weight and Sufficiency

{¶ 29} For ease of addressing the other errors, we address Miree's seventh assignment of error next. In his seventh assignment of error, Miree contends that his convictions of felony murder, involuntary manslaughter, and felonious assault are against the manifest weight of the evidence and that they were supported by insufficient evidence.

{¶ 30} A manifest weight challenge and a sufficiency of the evidence challenge are two distinct challenges to the evidence presented. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

### 1. Manifest Weight

{¶ 31} A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Id.*, quoting *Wilson* at *id.*, citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all of the

evidence in the record, the reasonable inferences made from it, and the credibility of the witnesses to determine "'"whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *."'" *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at 175.

{¶ 32} We find it necessary to note that the testimony of Campbell and Duncan, the only two witnesses who were actually present in the vehicle, raise significant credibility concerns. Turning first to Campbell, she testified that at the time of this incident, she was high on marijuana and admitted that she smoked marijuana two or three times before the incident. She testified that after the first shot went off in the vehicle, she felt dazed and testified that "everything was white." (Tr. 1373.) Campbell was confronted with the inconsistencies in her testimony on cross-examination, notably the fact that each time she provided information, she differed or added something new. Campbell also received a plea deal in exchange for truthful testimony, which was indicated to the jury many times throughout trial.

{¶ 33} Shifting to Duncan, he told a completely different version of the events. He testified that he was unaware of any tension or problems in the vehicle because he was listening to music on his headphones in the back seat and did not become aware that there was a problem until he noticed Hurley pointing a gun at Miree. This starkly contrasts Campbell's testimony that Duncan jumped into the

cargo area of the vehicle, displayed a gun, and instructed her to remain silent, likely with the intention of robbing Hurley. Duncan's testimony that he did not intend to rob anyone is further contradicted by Campbell's testimony that the occupants of the vehicle desired to rob Campbell's coworker prior to arriving at Hurley's house but were unsuccessful.

{¶ 34} Moreover, both Campbell and Duncan expressed trepidation in offering testimony and suggested that inconsistencies in their testimony were motivated by fear of being a "snitch." Indeed, we note that B.J., the other individual who was present in the vehicle during this incident, remains unidentified. Additionally, the evidence tends to demonstrate that the full story of what occurred in that vehicle has not been revealed. Specifically, there was testimony that the sole objective of this excursion was for Miree to supervise a transaction with a new, unknown marijuana dealer. However, Miree, for reasons unknown, instructed Campbell to pick up two other individuals that she did not know and had never met before, along the way. We acknowledge that from the evidence presented, the jury was tasked with synthesizing divergent testimony, significant circumstantial evidence, and drawing reasonable inferences therefrom.

{¶ 35} The jury was charged with a complicity instruction pursuant to R.C. 2923.03 and thus, could have considered evidence against Duncan as evidence against Miree if they found that Duncan and Miree were accomplices. The trial court also instructed that it was within the province of the jury to determine whether

Campbell was an accomplice. The evidence presented supports the conclusion that the defendants acted in concert.

{¶ 36} Pertinently, all of the codefendants were present in the vehicle when Hurley was thrown from it, including B.J. who is unknown to date. Evidence was presented that Miree instructed Campbell to pick up Duncan and B.J., even though Campbell did not know them. When asked why Miree instructed her to pick them up, Campbell stated, "he just said we've got to go to that house" and that "there was no explanation." (Tr. 1239.) Campbell testified that when Duncan got into the vehicle, he was being aggressive and asking to drive. After the incident occurred, Campbell dropped all three passengers off at the same location and they removed items from the vehicle, including Hurley's boot. Miree also instructed Campbell to clean her vehicle and remove evidence, including bullets. Miree came to Campbell's residence about four times before she spoke with the police. Even though the jury rejected the robbery theory, Campbell's testimony also indicated that she realized at some point that the occupants wanted to commit a robbery and even attempted to rob her coworker before reaching Hurley's home. The weight of the evidence presented supports a conclusion that the vehicle's occupants were acting in concert.

{¶ 37} To convict Miree of felony murder under R.C. 2903.02(B), the state was required to prove that Miree caused Hurley's death as a proximate result of the commission of a violent felony in the first or second degree. The state listed the predicate offenses as aggravated robbery and felonious assault, and the jury only found Miree guilty of felonious assault. For a felonious assault conviction, the state

was required to prove that Miree knowingly caused serious physical harm to Hurley. R.C. 2903.11(A)(1). Serious physical harm, as it relates to this matter, is defined as physical harm that carries a substantial risk of death and/or involves some permanent incapacity or disfigurement. R.C. 2901.01(A)(5)(b)-(d). We will therefore review the evidence supporting the felonious assault, with the knowledge that Hurley died as a result of this incident, which certainly constitutes serious physical harm.

{¶ 38} A review of the record abundantly supports a felonious assault conviction. The jury heard testimony from Campbell that Miree punched Hurley in the head, and testimony from Duncan admitting that he pushed Hurley from a moving vehicle with the knowledge that Hurley was likely to sustain an injury. Dr. Barr testified that the deep contusions to Hurley's face could have been caused by a physical altercation or the impact with the road. Dr. Barr also testified that Hurley's ultimate cause of death, a hinge-type fracture of the neck, is unique because it "takes a lot of force to generate" and is typically seen "in pedestrians that are hit by cars, when there are motor vehicle accidents, high velocity, any kind of a high-velocity injury." (Tr. 1933.)

{¶ 39} Further, a review of the evidence suggests that Miree was a domineering force in these events, which supports a complicity finding of felonious assault. He instructed Campbell to pick up Duncan. He instructed Campbell to drive away from the place where Hurley's body was left. He instructed Campbell to completely clean her vehicle, and he allegedly took possession of items left behind

in the vehicle. He also visited Campbell prior to Campbell speaking with the police and encouraged her to dispose of evidence. Miree's DNA was found on Campbell's steering wheel. Finally, Miree removed the marijuana from the scale, which could have caused Hurley to fire shots and lends itself to an inference that Miree instigated the situation. All of this considered, a reasonable inference exists that Miree was complicit in throwing Hurley from the vehicle or culpable of felonious assault solely through his individual conduct of punching Hurley in the head.

{¶ 40} Miree also argues that the state did not meet its burden in proving that he did not act in self-defense. Pertinently, the jury was instructed:

> THE COURT: * * * To prove that the defendants did not use deadly force in self-defense or defense of another, the State must prove beyond a reasonable doubt at least one of the following:
>
> A, the defendant was at fault in creating the situation giving rise to the death of Ramses Hurley;
>
> Or, B, the defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm;
>
> Or, C, the duty, the defendant violated a duty to retreat to avoid danger;
>
> Or, D, the defendant did not use reasonable force.

(Tr. 2448-2449.)

{¶ 41} A review of the facts indicates that the jury could have concluded that Duncan and/or Miree were not acting in self-defense. Testimony indicated that Miree grabbed the marijuana from the scale without paying for it, which lends itself to an inference that Miree was an instigator. There is also evidence that Miree

instigated the entire situation by inviting Duncan and B.J. into the vehicle on the way to Hurley's home. Though this is not an exhaustive list, we conclude that the record tends to support that the jury could have rejected that Duncan and Miree were acting in self-defense.

{¶ 42} Miree also argues that his involuntary manslaughter conviction was against the manifest weight of the evidence. Under R.C. 2903.04(A), the state was required to prove that Miree caused Hurley's death as a proximate result of committing or attempting to commit a felony. Again, the state named the predicate felonies as aggravated robbery and felonious assault; since the jury acquitted Miree of all robbery charges, felonious assault was the predicate felony. We already determined that the evidence supports a finding of felonious assault, and further supports a finding that these actions actually caused the death of Hurley.

{¶ 43} After reviewing the record, weighing the evidence, reviewing all reasonable inferences, and examining witness credibility, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice to warrant a new trial.

## 2. Sufficiency of the Evidence

{¶ 44} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 45} Balancing the evidence and testimony discussed above, as well as all other evidence in the record, we find that any reasonable factfinder could find that Miree intended to cause serious physical harm to Hurley and that Hurley's death proximately resulted from Miree's actions. Thus, the evidence presented, if believed, was sufficient to establish the elements of murder, felonious assault, and involuntary manslaughter.

{¶ 46} We therefore overrule Miree's seventh assignment of error.

### C. Lesser Included Offenses

{¶ 47} In his second assignment of error, Miree argues that the trial court erred in failing to instruct the jury on the lesser included offenses of reckless assault, reckless homicide, and involuntary manslaughter as a third-degree felony. Miree's trial counsel requested these instructions, which the trial court denied.

{¶ 48} Trial courts have broad discretion to determine whether the record contains sufficient evidentiary support to warrant a jury instruction on a lesser included offense, and that will not be reversed absent an abuse of discretion. *State v. Henderson*, 8th Dist. Cuyahoga No. 89377, 2008-Ohio-1631, ¶ 10, citing *State v. Wright*, 4th Dist. Scioto No. 01CA2781, 2002 Ohio App. LEXIS 7274 (Mar. 26, 2002). An abuse of discretion connotes a trial court's decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When considering evidence of a lesser included offense, the court must view it in a light most favorable to the defendant. *State v. Campbell*, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994). The instruction, however, is not warranted in every instance where some evidence is presented on a lesser included offense. *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992). An instruction on a lesser included offense is required only where "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

{¶ 49} The Ohio Supreme Court provides a two-tiered analysis for determining whether a lesser included instruction is warranted.

> The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier looks to the evidence in a particular case and determines whether "'a jury could

reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" [*State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13], quoting *Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant.

*State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6.

{¶ 50} Miree first argues that he was entitled to a jury instruction under Counts 5 and 6 (felonious assault) for the lesser included offense of reckless assault pursuant to R.C. 2903.13(B). The jury did not enter a finding of guilt for Count 6 pursuant to R.C. 2903.11(A)(2), which specifies that the assault was caused by a deadly weapon. Accordingly, Miree did not suffer any prejudice from the court's failure to instruct the jury on the lesser included offense as it relates to Count 6, so we will only review Count 5.

{¶ 51} In denying the request, the trial court reasoned:

I certainly don't think it applies to Count 6 in as much as that has the additional component of a deadly weapon. And, likewise, given the facts of the case, I don't think it would apply towards Count 5 either.

(Tr. 2419.)

{¶ 52} The first tier of the *Deanda* test is satisfied. This court has previously recognized reckless assault as the lesser included offense of felonious assault. *State v. McPherson*, 8th Dist. Cuyahoga No. 92481, 2010-Ohio-64, ¶ 7.

{¶ 53} Next, we review the second tier. Felonious assault as defined by R.C. 2903.11(A)(1), requires that an offender act "knowingly," while reckless assault, as defined by R.C. 2903.13(B), requires that an offender act "recklessly." This is the only difference between the two offenses. A person acts knowingly when the person

is aware that their conduct will probably cause a certain result. R.C. 2901.22(B). A person acts recklessly when, with heedless indifference to the consequences, they disregard a substantial and unjustifiable risk that their conduct is likely to cause a certain result. R.C. 2901.22(C).

{¶ 54} Under R.C. 2901.22(A), the state was not required to prove that Duncan or Miree acted with the specific intention to cause a certain result. *State v. Jackson*, 10th Dist. Franklin No. 94APA04-531, 1994 Ohio App. LEXIS 5504, 14 (Dec. 8, 1994). Rather, the state need only prove that the defendant acted knowingly, regardless of his purpose. *Id.* We therefore find that no reasonable juror would have found that Miree punching Hurley was committed recklessly rather than knowingly. The same may be said if the jury believed that Duncan pushed Hurley from a moving vehicle, pried Hurley's fingers from the door, and left Hurley in a road where a vehicle could strike him. Indeed, Duncan even testified that he knew Hurley would sustain an injury from being thrown from the vehicle. Therefore, the second tier of the analysis is not met, and the trial court did not err in concluding from the facts that a reckless assault instruction was not warranted.

{¶ 55} Next, Miree sought a jury instruction under Counts 1 and 2 (aggravated murder and felony murder), for the lesser included offense of reckless homicide. The jury acquitted Miree of aggravated murder. Accordingly, Miree did not suffer any prejudice from the court's failure to instruct the jury on the lesser included offense of reckless homicide. Any error as it pertains to the aggravated murder count is therefore harmless.

{¶ 56} Proceeding to felony murder, we apply the first prong of the *Deanda* test. The Ohio Supreme Court does not recognize reckless homicide as a lesser included offense of felony murder with a felonious assault predicate because "reckless homicide includes an element that felony murder lacks — being reckless with regard to the possibility of causing a death * * *." *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 16. Accordingly, the trial court did not err in failing to instruct the jury on reckless homicide as it related to aggravated murder and felony murder.

{¶ 57} Finally, Miree sought a jury instruction under Count 8 (involuntary manslaughter in the first degree) for the lesser included offense of involuntary manslaughter in the third degree. Where the elements of two offenses are "identical to or contained within the indicted offense, except for one or more mitigating elements," the lesser offense is considered an inferior degree offense. *State v. Deem*, 40 Ohio St.3d 205, 206, 533 N.E.2d 294 (1988). Under R.C. 2903.04(A), involuntary manslaughter is a first-degree felony if the predicate offense is a felony. Under R.C. 2903.04(B), involuntary manslaughter is a third-degree felony if the predicate offense is a misdemeanor, regulatory offense, or minor misdemeanor. Involuntary manslaughter in the third degree is plainly a lesser offense of involuntary manslaughter in the first degree. The first tier of the *Deanda* test is satisfied as to Miree's request for a third-degree involuntary manslaughter instruction.

{¶ 58} Next, we apply the second tier of *Deanda*. Involuntary manslaughter decreases from a first-degree felony to a third-degree felony when the predicate offense is no longer a felony, but a misdemeanor. In the instant matter, the predicate felonies for the involuntary manslaughter count were listed as either aggravated robbery or felonious assault. Because the jury acquitted Miree of aggravated robbery, any error is harmless and we need not examine it.

{¶ 59} Turning next to involuntary manslaughter with a felonious assault predicate, Miree argues that because he was entitled to an instruction on reckless assault, that could have served as the predicate offense for an instruction on involuntary manslaughter in the third degree. Because we did not find that Miree was entitled to an instruction on reckless assault, we need not determine whether he was entitled to an instruction on involuntary manslaughter in the third degree. Finding no other predicate offense to support involuntary manslaughter in the third degree, we need not inquire further.

{¶ 60} Finding no error by the trial court, we overrule Miree's second assignment of error.

### D. Self-Defense and Duty to Retreat

### 1. Self-Defense

{¶ 61} In his third assignment of error, Miree contends that the trial court misapplied the laws of self-defense in instructing the jury. In his eighth assignment of error, he claims that trial counsel was ineffective for failing to object to the given self-defense instructions. Particularly, Miree argues that the jury instructions only

contemplated deadly force, and it was the state's burden to present a case that allowed the jury to conclude whether the force was deadly or nondeadly.

{¶ 62} This distinction between deadly and nondeadly force was never raised by the defense, nor was any objection made to the self-defense portions of the jury instructions. Further, a review of the record indicates that Miree's counsel actually provided the jury instruction that he now raises as an error.

> [MIREE'S COUNSEL]:  * * * Evidence was presented that tends to support a finding that the defendant used deadly force in self-defense.

(Tr. 2055.)

{¶ 63} The trial court presented this "deadly force" language in its charge to the jury. Miree is attempting to raise as error an instruction that he introduced. The invited-error doctrine forecloses any successful argument on appeal. "Under the settled principle of invited error, a litigant 'may not take advantage of an error which he himself invited or induced.'" *State v. Murphy*, 91 Ohio St.3d 516, 535, 747 N.E.2d 765 (2001), quoting *Hal Artz Lincoln-Mercury v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus, citing *Lester v. Leuck*, 142 Ohio St. 91, 92, 50 N.E.2d 145 (1943).

{¶ 64} "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. The burden rests with the defendant to establish that counsel's performance fell below an objective standard of reasonable representation. *State v.*

*Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim, appellant must show that (1) counsel's performance was deficient; and (2) the result of appellant's trial would have been different had defense counsel provided proper representation. *Strickland* at 687; *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986).

{¶ 65} The failure to make objections, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). Furthermore, on numerous occasions, this court has addressed that invited error is a matter of trial strategy, and appellate courts will not question matters of trial strategy. *See, e.g.*, *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 75; *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 9; *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 35; *State v. West*, 8th Dist. Cuyahoga Nos. 97391 and 97900, 2013-Ohio-96, ¶ 27. This is because "'[t]here is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error.'" *State v. James,* 2015-Ohio-4987, 53 N.E.3d 770, ¶ 29 (8th Dist.), quoting *Doss* at *id*.

{¶ 66} Miree states that counsel was ineffective for failing to object to the self-defense instructions as they pertained to distinguishing deadly and nondeadly force. However, trial counsel provided these instructions, which constitutes trial strategy. Therefore, we find that any error was invited, and we will not consider it as ineffective assistance of counsel.

## 2. Duty to Retreat

{¶ 67} In his third assignment of error, Miree also argues that the trial court erred in instructing the jury regarding his potential duty to retreat before acting in self-defense. R.C. 2901.09, governing the duty to retreat, was amended after the subject offense occurred. Part of the amendments included the addition of subsection (C), which was in effect at the time of trial and reads:

> (C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

R.C. 2901.09(C).

{¶ 68} Miree argues that the trial court erred in instructing the jury that he had a duty to retreat, which runs afoul of the amendment to R.C. 2901.09 that was in effect at the time of trial.

{¶ 69} A statute may not be applied retroactively unless expressly made retroactive. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 9. Further, a statute is presumed to operate prospectively unless expressly made retroactive. R.C. 1.48. Further, this court has noted that "'[i]n Ohio, when the General Assembly reenacts, amends, or repeals a criminal statute, the substantive provisions of the former law apply to all pending prosecutions, but the defendants receive the benefit of a reduced "penalty, forfeiture, or punishment" in the statute as amended, unless the General Assembly expresses another intent.'" *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 59, quoting *State v. Solomon*,

2012-Ohio-5755, 983 N.E.2d 872, ¶ 16 (1st Dist.), citing R.C. 1.58, and *State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).

{¶ 70} This court has previously held that R.C. 2901.09(C) does not apply retroactively and is not required when subsection (C) was not in effect at the time of the offense. *Hurt* at ¶ 61; *State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 79. Consistent with this court's previous holdings, we find that the trial court did not err in instructing the jury on the duty to retreat because it existed at the time of the offense. Additionally, one of our sister districts, the Second District, has come to the same conclusion regarding the amendments to R.C. 2901.09. *See, e.g., State v. Jones*, 2d Dist. Montgomery No. 29214, 2022-Ohio-3162, ¶ 39; *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 19; *see also Jones* at ¶ 40 (declining to address duty-to-retreat errors because the inquiry appears purely academic when the place of retreat that is contemplated is a vehicle, where retreat is difficult to conceive).

{¶ 71} We are also unpersuaded that the Supreme Court's recent opinion in *State v. Brooks*, Slip Opinion No. 2022-Ohio-2478, addressing the 2019 amendments to the self-defense statute (R.C. 2901.05), extends to the duty to retreat amendments. In *Brooks*, the Ohio Supreme Court held that the amendments to R.C. 2901.05 applied prospectively to all trials after the amendment's effective date, regardless of when the underlying conduct occurred. *Id.* at ¶ 23. In making this determination, the *Brooks* Court reasoned that R.C. 2901.05 as amended only shifted the burden and did not change the substance of a self-defense claim. *Id.* at

¶ 15 (the amendments neither provide nor take away any substantive right because even under the former R.C. 2901.05, defendants still had a right to make a self-defense claim). The duty to retreat amendment is different. Pursuant to this court's finding in *Hurt*, the amended R.C. 2901.09(C) is a substantive change inasmuch as it pertains to an element of the offense and removes an element that the factfinder must consider. *Hurt* at ¶ 61.

{¶ 72} Unlike the self-defense amendments that merely shift the burden, the amended R.C. 2901.09(C) is a substantive change and cannot be applied retroactively. The law as it existed at the time of the offense is the law that the jury must consider.

{¶ 73} We therefore find that the trial court properly instructed the jury pursuant to the version of R.C. 2901.09 that was in effect at the time of the offense.

{¶ 74} Miree's third assignment of error is overruled.

### E. June 19 Video Interview

{¶ 75} In his fourth assignment of error, Miree alleges that the video of Campbell's interview with the detectives, occurring on June 19, 2019, was improperly admitted into evidence during the state's redirect examination of Campbell. Miree specifically objects to an emotional 18-minute segment of the video where Campbell and her grandmother are hugging, praying, and discussing the consequences of Campbell's actions. Campbell's grandmother encourages Campbell to be truthful and implies that Campbell's codefendants were not truthful.

Miree alleges that the segment was prejudicial to him because it violated Evid.R. 401, 402, 403, 404, 802 and improperly appealed to the juror's sympathies.

{¶ 76} The admission or exclusion of evidence is left to the sound discretion of the trial court. *State v. Rogers*, 8th Dist. Cuyahoga No. 105879, 2018-Ohio-3495, ¶ 15, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Further, whether evidence is relevant, confusing, or misleading is best left to the discretion of the trial court who is in a better position to analyze the evidence's impact on the jury. *Renfro v. Black*, 52 Ohio St.3d 27, 31, 556 N.E.2d 150 (1990), citing *Columbus v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382 (1988); *Calderon v. Sharkey*, 70 Ohio St.2d 218, 222, 436 N.E.2d 1008 (1982).

{¶ 77} We first note that Miree's counsel was given an opportunity to review the footage and mark specific segments for redaction, which Miree's counsel did. Since the record indicates that Miree's counsel was given an opportunity to review the footage and did not object to this segment, we are constrained to a plain error analysis.

> In the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable and fundamental so that it should have been apparent to the trial court without objection. *See State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996). Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).

*State v. Potter*, 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 43.

{¶ 78} During trial, Miree's defense centered around portraying Campbell as an unreliable witness who was coerced into her statements and confessions by detectives and cooperated out of fear. The state contends that this portion of the video was admissible because it demonstrates that Campbell was encouraged to do the right thing and be truthful. We agree and will not disturb the judgment of the trial court. We further conclude that it is unlikely that the redaction of this footage would have changed the outcome of the trial because the jury clearly did not find Campbell credible in rejecting to convict Miree and Duncan on any robbery-related charges, despite this segment of the video tending to show that Campbell was providing truthful statements.

{¶ 79} We also address Miree's eighth assignment of error, alleging that Miree's trial counsel provided ineffective assistance of counsel in failing to ensure that this segment was redacted from the exhibit. "[T]rial strategy or tactical decisions 'cannot form the basis for a claim of ineffective assistance of counsel.'" *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 25 (8th Dist.), quoting *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 26. Noting that Miree's trial counsel reviewed the footage and marked other sections for redaction, we can only assume that failure to mark these sections for redaction was a trial strategy. And, indeed, this may have been tactical in an effort to impeach Campbell

by demonstrating that even after this emotional segment, she still did not tell the full story.

{¶ 80} Miree's fourth and eighth assignments of error are overruled.

## F. Crime-Scene Evidence

{¶ 81} Miree's fifth assignment of error alleges that the trial court erred in refusing to grant a mistrial pursuant to the contention of Duncan's trial counsel that the subject vehicle was destroyed in bad faith, before trial counsel had an opportunity to examine it. Miree's counsel joined this motion. The state responded that there was no bad faith because Campbell, the owner of the vehicle, was notified pursuant to internal policy that the vehicle was ready to be released.

{¶ 82} At trial, Sergeant Reese testified that after all the evidence was gathered, Campbell's attorney was notified that the car was released and ready for pickup. Seven weeks later, having received no response, the vehicle was destroyed on August 30, 2019. He testified that this was department policy. Miree and Duncan were not arrested in connection with this incident until December of 2019, and, therefore, would not have been contacted about maintaining the vehicle for evidentiary purposes.

{¶ 83} Duncan's counsel called Richard Cerny, a retired accident reconstruction detective for the Cleveland Police, who testified that the standard operating procedure was to retain the vehicle until trial of the matter.

{¶ 84} Miree contends that he was denied examination of the vehicle for potential exculpatory evidence, including swabs of the far back seat, the backseats,

the door where Hurley's fingers were allegedly pried from, and the cargo area where Duncan was allegedly hiding. The state argues that mere "potential" to contain exculpatory evidence is not significant enough to warrant a mistrial.

{¶ 85} We first note that even if error existed here, Miree's request for a new trial does not remedy the error. Because the vehicle was destroyed, it is not available for reexamination. Additionally, the jury was made aware that evidence was missing from the vehicle due to the fact that it was not retained. Trial counsel for Duncan and Miree cross-examined Sergeant Reese about the destruction of the vehicle. Further, Duncan's counsel called Richard Cerny, a retired accident reconstruction detective for the Cleveland police who testified that the standard operating procedure was to retain the vehicle until trial of the matter. We fail to see what could be done differently at a new trial.

{¶ 86} Nonetheless, we find that there was no error in denying a mistrial. Unless there is a showing of bad faith, "failure to preserve potentially useful evidence does not constitute a denial of due process of law, nor should it lead to a presumption of suggestiveness." *State v. Keith*, 79 Ohio St.3d 514, 523, 684 N.E.2d 47 (1997), citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Miree has not made a showing of bad faith, and we find nothing in the record to support a finding of bad faith. As a result, Miree's fifth assignment of error is overruled.

## G. Juvenile Record

{¶ 87} Miree's sixth assignment of error asserts that the trial court erred in refusing to grant a mistrial, but this time on the basis of Duncan's juvenile record being admitted into evidence. Miree argues that Duncan's significant juvenile record adversely affected him and was unfairly prejudicial.

{¶ 88} During trial, the state noted their intent to cross-examine Duncan on his juvenile record if the defense opened the door to his juvenile adjudications. Briefing was done overnight, and Miree's counsel moved to bar all mention of Duncan's juvenile adjudications and moved for a mistrial if they were allowed, because of their unfair prejudice to Miree. The court significantly limited the state's mention of the juvenile record, allowing only one of Duncan's 2017 adjudication of aggravated robbery and kidnapping with firearm specifications.

{¶ 89} The admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. *State v. Simmons*, 8th Dist. Cuyahoga No. 98613, 2013-Ohio-1789, ¶ 18, citing *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 17. An abuse of discretion connotes a trial court's decision that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶ 90} Granting a mistrial is within the sound discretion of the trial court. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). Mistrials need only be declared when the ends of justice so require and a fair trial is no longer possible. *Id.*, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Mistrials

should be granted with great caution, under urgent circumstances, and for very plain and obvious reasons. *State v. Bogan*, 8th Dist. Cuyahoga No. 106183, 2018-Ohio-4211, ¶ 24.

{¶ 91} The trial court significantly limited Duncan's prior record, allowing the prosecution to mention only one adjudication. We find no abuse of discretion in the trial court's determination to limit the record. We also note that the trial court gave a limiting instruction pursuant to Miree's request. The court instructed the jury, "Moreover, any evidence of Desmond Duncan's juvenile court history cannot be considered for any purpose when evaluating evidence against Jaidee Miree." (Tr. 2441.)

{¶ 92} Juries are presumed to follow all instructions given to them, including limiting instructions. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 93, 147; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 54.

{¶ 93} Accordingly, Miree's sixth assignment of error is overruled.

### H. Sentencing

{¶ 94} In his final assignment of error, Miree maintains that his life sentence pursuant to R.C. 2929.02(B) is contrary to law and further argues that the sentence is unconstitutional.

{¶ 95} Pursuant to R.C. 2929.02(B), the sentence must be worded as "an indefinite term of fifteen years to life." Instead, the trial court wrote "a life sentence without the possibility of parole for 15 years." The state concedes that the trial court

erred in this respect. We therefore vacate that portion of the judgment entry and remand for resentencing.

{¶ 96} Miree also contends that the trial court erred in issuing a mandatory life sentence, arguing that it was unconstitutional. In support of his contention, Miree asks us to extend the Ohio Supreme Court's holding in *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, to any juvenile sentenced to life, even with the possibility of parole. *Patrick* holds that "a trial court must separately consider the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole." *Patrick* at ¶ 2. This holding, however, is constrained by R.C. 2929.03, which specifically pertains to sentencing for aggravated murder. We decline to extend *Patrick's* holding to the case at bar, consistent with *State v. Carlock*, 7th Dist. Jefferson No. 19 JE 0017, 2021-Ohio-4550, and *State v. Fuell*, 2021-Ohio-1627, 172 N.E.3d 1065 (12th Dist.).

{¶ 97} We therefore find that the trial court's sentence consistent with R.C. 2929.02(B)(1) was not contrary to law and, therefore, find no error.

{¶ 98} We further note that during sentencing, the court addressed Miree and Duncan, stating:

> THE COURT: * * * Unfortunately, nothing I can say or do is going to bring that young man back. Nothing I can say or do is going to stop you from spending the next — if I had to guess probably save an appeal, 20 plus years at least in the penitentiary. Half your life or your life at this point in time.

So it doesn't really do me any good to sit here and lecture you, but maybe it would be a message for everybody else to understand that you can't be doing this stuff. And you guys have a record, which at least supports an argument that this isn't your first foray into the system. You should have known better.

I'll give Mr. Cafferkey his arguments to say you're young men and maybe you're not as wise as you would or should be or would become, but this isn't just your first spot here. You play with fire, you're going to get burned.

(Tr. 2703.)

{¶ 99} The trial court's direct statements during sentencing indicate that Miree's youth was taken into consideration during sentencing. We therefore overrule this portion of Miree's final assignment of error.

### III. Conclusion

{¶ 100} Pursuant to Miree's ninth assignment of error, we vacate the sentencing entry of the trial court and remand for resentencing consistent with the language required by R.C. 2929.02(B).

{¶ 101} We overrule all of Miree's other assignments of error. Miree's bindover from juvenile court was supported by sufficient evidence; Miree's convictions were not based on insufficient evidence nor were they against the manifest weight of the evidence; the trial court did not err in instructing the jury on self-defense; the trial court did not err in admitting evidence that Miree claims was prejudicial; the trial court did not err in denying all motions for a mistrial; Miree did not receive ineffective assistance of counsel; and his life sentence does not violate his constitutional rights. Appellant's convictions are affirmed.

{¶ 102} Affirmed in part, vacated in part, and remanded to the lower court for resentencing consistent with this opinion.

It is ordered that the parties share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION

EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 103} I respectfully dissent. I would sustain Miree's second and third assignments of error in part, reverse Miree's convictions for murder, felonious assault and first-degree felony involuntary manslaughter (Counts 2, 5 and 8) and remand for a new trial on those counts.

**Lesser Included Offenses**

{¶ 104} In his second assignment of error, Miree contends that he was denied due process and a fair trial because the trial court refused to instruct the jury, as requested, regarding (1) assault under R.C. 2903.13(B) ("reckless assault") as a lesser included offense of felonious assault as charged in Count 5, (2) third-degree felony involuntary manslaughter under R.C. 2903.04(B) (with reckless assault as the predicate offense) as a lesser included offense of felony murder (with felonious assault as the predicate offense) as charged in Count 2 and first-degree felony involuntary manslaughter (with felonious assault as the predicate offense) as charged in Count 8 and (3) reckless homicide under R.C. 2903.041 as a lesser included offense of aggravated murder as charged in Count 1 and first-degree felony involuntary manslaughter as charged in Count 8. Miree asserts that, if the jury been instructed on reckless assault, it might have determined that the defendants did not cause serious physical harm to Hurley knowingly, but recklessly, finding him not guilty of felonious assault and guilty of reckless assault. He further argues that because reckless assault is a misdemeanor, a conviction for reckless assault (rather than felonious assault) could not support a conviction for felony murder as charged in Count 2 or a conviction for first-degree felony involuntary manslaughter as charged in Count 8.

{¶ 105} "A criminal defendant is sometimes entitled to a jury instruction that allows the jury to consider convicting the defendant of a lesser included offense as an alternative to convicting for the offense for which the defendant was charged."

*State v. Owens*, 162 Ohio St.3d 596, 597, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 8, citing *State v. Thomas*, 40 Ohio St.3d 213, 216-218, 533 N.E.2d 286 (1988).

{¶ 106} Count 5 charged Miree with felonious assault under R.C. 2903.11(A)(1), which states, in relevant part, "No person shall knowingly * * * [c]ause serious physical harm to another." Reckless assault is proscribed in R.C. 2903.13(B), which provides, in relevant part, "No person shall recklessly cause serious physical harm to another." Count 2 charged Miree with felony murder under R.C. 2903.02(B) which states, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C.] 2903.03 or 2903.04." Count 8 charged Miree with first-degree felony involuntary manslaughter under R.C. 2903.04(A), which states, in relevant part, "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Third-degree felony involuntary manslaughter is proscribed in R.C. 2903.04(B), which provides, in relevant part, "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree."

{¶ 107} The parties do not dispute that, as statutorily defined, reckless assault in violation of R.C. 2903.13(B) is a lesser included offense of felonious assault in violation of R.C. 2903.11(A)(1), *see, e.g., State v. Benson,* 8th Dist. Cuyahoga No. 106214, 2018-Ohio-2235, ¶ 24, *State v. Holcomb*, 7th Dist.

Columbiana No. 18 CO 0039, 2020-Ohio-561, ¶ 31, or that because reckless assault is a misdemeanor, a conviction for reckless assault (rather than felonious assault) could not support a conviction for felony murder as charged in Count 2 or a conviction for first-degree felony involuntary manslaughter as charged in Count 8, but could, instead, support a conviction for third-degree felony involuntary manslaughter under R.C. 2903.04(B).[2] At issue in this case is whether sufficient evidence was presented below to warrant a jury instruction on reckless assault as a lesser included offense.

{¶ 108} A trial court must instruct the jury on a lesser included offense if, under any reasonable view of the evidence, it would be possible for the jury to find defendant not guilty of the offense charged and guilty of the lesser offense. *See, e.g., State v. Wine*, 140 Ohio St.3d 409, 418, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 32, 34; *see also Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, at paragraph two of the syllabus ("Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where

---

[2] Miree also asserts that he was entitled to an instruction on reckless homicide as a lesser included offense of aggravated murder as charged in Count 1 and first-degree felony involuntary manslaughter as charged in Count 8. I agree that Miree has not shown that the trial court committed reversible error in failing to give an instruction on reckless homicide. As the majority points out, Miree was acquitted of aggravated murder as charged in Count 1. Miree cites no legal authority and makes no argument in support of his claim that reckless homicide under R.C. 2903.041 is a lesser included offense of first-degree felony involuntary manslaughter as charged in Count 8. App.R. 12(A)(2), 16(A)(7); *cf. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, at ¶ 1 ("Because felony murder has no mens rea requirement in regard to the death of a victim, whereas reckless homicide has the mens rea of recklessness, reckless homicide is not a lesser included offense of felony murder.").

the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."); *State v. Miller*, 8th Dist. Cuyahoga No. 109130, 2021-Ohio-2924, ¶ 86. An appellate court reviews a trial court's decision whether to give a requested jury instruction on a lesser included offense for abuse of discretion. *State v. Parker*, 8th Dist. Cuyahoga No. 110563, 2022-Ohio-377, ¶ 11; *Miller* at ¶ 87, citing *State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 67 (8th Dist.).

{¶ 109} The distinguishing element between felonious assault under R.C. 2903.11(A)(1) and reckless assault under R.C. 2903.13(B) is whether the defendant acted knowingly or recklessly.

{¶ 110} A person acts "knowingly" when, "regardless of purpose," "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A person acts "recklessly" when, "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Both offenses require that the act caused serious physical harm.[3]

---

[3] "Serious physical harm to persons" is any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
> (b) Any physical harm that carries a substantial risk of death;
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

{¶ 111} The state maintains that the trial court did not abuse its discretion in refusing to give Miree's requested jury instructions on lesser included offenses because, based on Campbell's testimony, the evidence showed that Duncan and Miree "acted knowingly, not recklessly" and was, therefore, "insufficient to warrant the requested instructions."

{¶ 112} In support of its position, the state points to the following testimony by Campbell:

> The testimony given by Trinity Campbell was that she and the Appellant with Duncan went to the victim's home for what she understood to be a robbery. Tr. 1247-48; Tr. 1257. Once she pulled up, Duncan jumped into the rear of the vehicle and hid. Tr. 1251-52. Once the marijuana was on the console, the Appellant, who had a firearm, snatched it. Tr. 1255. Another gun came out and went off, and Trinity Campbell testified that Duncan had the victim in a headlock with a gun to him, and the Appellant was punching him in the face. Tr. 1255-56, 1588. These individuals acted knowingly, not recklessly. The Appellant committed a felonious assault when he was punching the victim over and over in the face while Duncan had a firearm and he was tossed out of the vehicle. This was the evidence at trial and what the trial court had to assess when deciding whether to instruct on lesser included offenses.

{¶ 113} However, Campbell's testimony alone is not dispositive of the issue. In determining whether lesser included offense instructions are appropriate, a trial court is required to consider all the evidence presented, viewing that evidence in the light most favorable to the defendant. *Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948,

---

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

18 N.E.3d 1207, at ¶ 21, citing *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37; *Miller*, 8th Dist. Cuyahoga No. 109130, 2021-Ohio-2924, at ¶ 86. That evidence included Duncan's testimony.

{¶ 114} In support of its determination that "the trial court did not err in concluding from the facts that a reckless assault instruction was not warranted," the majority observes:

> [N]o reasonable juror would have found that Miree punching Hurley was committed recklessly rather than knowingly. The same may be said if the jury believed that Duncan pushed Hurley from a moving vehicle, pried Hurley's fingers from the door, and left Hurley in a road where a vehicle could strike him. Indeed, Duncan even testified that he knew Hurley would sustain an injury from being thrown from the vehicle.

*See* ¶ 54 above. I do not believe the majority's view of "the facts" is consistent with the requirement that the evidence be viewed in the light most favorable to the defendant.

{¶ 115} Miree did not testify at trial. Duncan testified that Campbell had agreed to give him, Miree and B.J. a ride to the music studio, where Duncan worked on his hip-hop music. Tr. 2217-2219, 2224. Duncan indicated that Campbell was in the driver's seat, that he was in the rear passenger seat behind Campbell, that Miree was in the front passenger seat and that B.J. was seated behind Miree. Tr. 2227-2228, 2232-2233. Duncan stated that although the others were planning to stop and purchase marijuana on the way, he did not need any marijuana and that he was wearing headphones and listening to music as Campbell drove. Tr. 2224-2225, 2233, 2236.

{¶ 116} Duncan testified that when they arrived at the location arranged for the marijuana purchase, the drug dealer, Hurley, opened the rear driver-side door and got into the vehicle, and Duncan moved over into the rear middle seat. Tr. 2233-2236. Duncan testified that he heard "shouting over his music" and that when he pulled out his headphones, he saw that Hurley had a gun and was pointing it at Miree. Tr. 2236-2237.

{¶ 117} Duncan testified that he had no intent to rob Hurley or anyone else that day, denied that he had wanted to harm Hurley and denied that he had crawled over the back seat and hid in the trunk area of the vehicle with a gun as described by Campbell. Tr. 2235, 2243-2244, 2247-2248, 2365.

{¶ 118} Duncan testified that when he saw Hurley's gun, he grabbed Hurley's hands, which were around the gun, and pulled them towards him. Tr. 2237-2238. He stated that they were in "kind of like a tug of war" when Hurley fired the gun once towards Miree. Tr. 2238. Duncan stated that he thought Hurley had shot Miree. Tr. 2240-2241. As Hurley pulled back away from Duncan and they continued to struggle for the gun, a second shot "went off" towards Campbell. Tr. 2238-2239. Duncan stated that he then thought Campbell had been shot. Tr. 2245-2246.

{¶ 119} Duncan stated that, at this point, Hurley's back was turned toward the rear driver-side door and Duncan was "almost, like, in his lap." Tr. 2239. Duncan testified that, as they continued to struggle, Hurley dropped the gun and it fell onto the floor of the vehicle in front of their feet. Tr. 2239-2240. Duncan stated that he did not attempt to retrieve the gun because he was not trying to shoot Hurley;

he just wanted to get the gun away from Hurley.  Tr. 2240.  Duncan testified that he

thought that if Hurley retrieved the gun, Hurley would shoot Duncan too.  Tr. 2241,

2365.

{¶ 120} As to what happened next, Duncan testified:

Q.  So once you're reaching for [Hurley's] hands —

A.  Yes.

Q.  — and the gun falls, what did you decide to do?

A.  Well, push him out of the car.  That's what — that's the first thing that came to my mind.  Like, we were up against the car and on the car, so that was pretty much the first thing that came to my mind.

Q.  Did you — did you know that the car was moving at that moment?

A.  I didn't know it was moving.  When I see on the video, I couldn't even really believe it.  But, like, I didn't know it was moving.

Tr. 2241-2242.

{¶ 121} Duncan testified that, to avoid getting shot, he felt like he either had

to "go for the gun" or push Hurley out of the vehicle and that he chose to push Hurley

out of the vehicle:

Q.  Just to be clear, why did you push him out of the car?

A.  I just wanted him away from the gun.  Like, that's all. I wanted him away from the gun.  Like, I didn't want to try to go for the gun and then he gets the gun because it would have been us both going for the gun.  I would have had to let him go and then we both going for the gun then and now he gets the gun and then — * * * He could have done anything.  Kicked it, anything. I wasn't — that was the first thing for my mind.  Once I got the gun out of his hands, I felt comfortable enough that — to push him out of the car and get him away from the gun.

Tr. 2242-2243, 2255. Duncan denied that Miree punched Hurley. Duncan stated that he was "the only one who touched [Hurley]." Tr. 2353.

{¶ 122} Duncan testified that he did not call police after the incident because he "didn't know [Hurley] was dead" and "nobody [he] was with was hurt." Tr. 2244. Duncan stated, "I'm not going to say I didn't think [Hurley] was hurt. He got pushed out of a car, but I didn't think he was dead." *Id.* Duncan did not testify that "he knew Hurley would sustain an injury from being thrown from the vehicle," as the majority posits.

{¶ 123} The incident was captured, in part, on surveillance video footage obtained from a nearby apartment complex. The video shows the vehicle's movements prior to, at the time of, and immediately following the incident. At the time Hurley was pushed out of the vehicle, it appears the vehicle was moving very slowly.

{¶ 124} Considering all of the evidence presented at trial, viewed in the light most favorable to Miree, including Duncan's testimony, the surveillance video, the chaos that erupted inside the vehicle and the very brief time that elapsed between Hurley entering the vehicle, the shots being fired inside the vehicle and Hurley being pushed from the vehicle, I believe a jury could have reasonably found that the defendants acted "recklessly" — "with heedless indifference to consequences," "disregard[ing] a substantial and unjustifiable risk" that their actions were "likely to cause" serious physical harm to Hurley — as opposed to "knowingly" — "aware" that their actions would "probably cause" serious physical harm to Hurley.

{¶ 125} Accordingly, I would find that the trial court abused its discretion in failing to instruct the jury regarding reckless assault and third-degree felony involuntary manslaughter as lesser included offenses.

**Jury Instructions Regarding the Duty to Retreat**

{¶ 126} I would also reverse Miree's convictions for murder, felonious assault and first-degree felony involuntary manslaughter (Counts 2, 5 and 8) because I believe the trial court improperly included jury instructions regarding a duty to retreat when instructing the jury regarding self-defense and defense of another.

{¶ 127} The offenses at issue in this case occurred on June 16, 2019. Miree was indicted on March 3, 2020, and trial commenced on June 7, 2021. Effective April 6, 2021 — while Miree's case was pending — R.C. 2901.09 was amended to eliminate a duty to retreat before using force in self-defense or defense of another if a person is "in a place" where he or she "lawfully has a right to be" (the "2021 amendments"). R.C. 2901.09(B).

{¶ 128} Prior to the 2021 amendments, R.C. 2901.09(B) stated:

> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

R.C. 2901.09(B) now states:

> For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

The 2021 amendments also added R.C. 2901.09(C), which states: "A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety."

{¶ 129} During a break in the trial, Miree's counsel proffered various self-defense jury instructions. The proposed jury instructions included instructions stating that "the defendant is allowed to use deadly force in self-defense" and that "[e]vidence was presented that tends to support a finding that the defendant used deadly force in self-defense." Tr. 2055-2059. Miree's counsel also proposed the following jury instruction regarding the absence of a duty to retreat:

> Under Ohio law, an individual does not have a duty to retreat before acting in self-defense. In deciding whether the defendant reasonably believed that force was necessary to prevent death or great bodily harm, you may not consider the possibility that the defendant could have retreated or tried to escape rather than using force in self-defense.

Tr. 2058-2059.

{¶ 130} Prior to closing arguments, the state requested that the trial court remove the no-duty-to-retreat instruction from the self-defense jury instructions and that the trial court add a duty-to-retreat instruction. Tr. 2410. Although the state acknowledged that, generally, "a person who is lawfully an occupant of a vehicle has no duty to retreat before using deadly force in self-defense," the state

asserted that, based on case law, the "castle doctrine"[4] could not be invoked where, as here, the victim was not an intruder but was also a lawful occupant of the vehicle at the time force was used against him.[5]  Tr. 2410-2412.  Over defense counsel's objection, the trial court removed the no-duty-to-retreat instruction and included the duty-to-retreat instruction in the jury instructions.

{¶ 131} Jury instructions are "critically important to assist juries in determining the interplay between the facts of the case before it and the applicable law."  *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5.  Although a trial court has "broad discretion to decide how to fashion jury

---

[4] The "castle doctrine," i.e., that a defendant who is lawfully in his or her residence has no duty to retreat before using force in self-defense, is derived from the maxim that "a man's home is 'his castle.'"  *State v. Comer*, 4th Dist. Gallia No. 10CA15, 2012-Ohio-2261, ¶ 11, citing 4 *Blackstone, Commentaries on the Laws of England*, Chapter 16, 223 (Rev. Ed.1979); *see also State v. Thomas*, 2019-Ohio-2795, 139 N.E.3d 1253, ¶ 39 (11th Dist.), quoting *State v. Peacock*, 40 Ohio St. 333, 334 (1883) ("'[w]here one is assaulted in his home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house * * * even to the taking of life'").  (Emphasis deleted.)  In 2008, the castle doctrine was codified in R.C. 2901.09(B).  The statute extended the area in which a person had "no duty to retreat" to include both a person's residence and vehicle and the vehicle of an immediate family member.  *See* former R.C. 2901.09(B) (effective Sept. 9, 2008).  The 2021 amendments to R.C. 2901.09, commonly referred to as the "stand-your-ground law," eliminate the duty to retreat when a person is "any place" he or she "is lawfully entitled to be" — not just when a person is lawfully in his or her own residence or vehicle or the vehicle of an immediate family member.  *See* R.C. 2901.09(B); *State v. Estelle*, 2021-Ohio-2636, 176 N.E.3d 380, fn. 5 (3d Dist.).

[5] The state's argument below was incorrect.  The fact that Hurley had been invited into Campbell's vehicle did not affect whether the defendants had a duty to retreat prior to using force against Hurley.  *See* R.C. 2901.09(B); *see also State v. Echevarria*, 8th Dist. Cuyahoga No. 105815, 2018-Ohio-1193, ¶ 33 ("If the victim was lawfully in the defendant's residence at the time the defendant used force against the victim, the defendant would not be entitled to the presumption of self-defense. * * * However, the castle doctrine would still apply, i.e., the defendant would have no duty to retreat from the residence if the defendant were lawfully occupying the residence at the time he or she used the force.").

instructions," the trial court must "'fully and completely give all jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Requested jury instructions should "ordinarily be given if they are correct statements of law, if they are applicable to the facts of the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240. As a general matter, "[a]n appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." *Id.*, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). However, what law applies and whether a jury instruction correctly states the applicable law are legal issues an appellate court reviews de novo. *See, e.g., State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135. An incorrect or inadequate instruction that misleads the jury or otherwise prejudices the defendant constitutes reversible error. *See, e.g., Simbo Properties v. M8 Realty, L.L.C.*, 2019-Ohio-4361, 149 N.E.3d 941, ¶ 18 (8th Dist.); *Echevarria* at ¶ 28-29.

{¶ 132} I recognize that this court has previously held that the 2021 amendments to R.C. 2901.09 do not apply to offenses that were committed prior to the April 6, 2021 effective date. *See State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 56-66, and *State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 77-79. However, those decisions were based, in part, on cases

that held that the amendment to R.C. 2901.05 effective March 28, 2019 — which shifted the burden of proof to the state to prove that the defendant did not act in self-defense — did not apply to cases in which the offense was committed prior to the effective date. *See, e.g., Hurt* at ¶ 60-61, citing *State v. Stiltner*, 4th Dist. Scioto No. 19CA3882, 2021-Ohio-959; *Claytor* at ¶ 79, citing *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 24, fn. 2, citing *State v. Koch*, 2019-Ohio-4099, 146 N.E.3d 1238 (2d Dist.).

{¶ 133} After *Hurt* and *Claytor* (and the cases upon which they relied) were decided, the Ohio Supreme Court issued its decision in *State v. Brooks*, Slip Opinion No. 2022-Ohio-2478. In *Brooks*, the Ohio Supreme Court held that "the amendment to R.C. 2901.05 (enacted in H.B. 228) is not retroactive — it applies prospectively to all trials occurring after its effective date, regardless of when the underlying alleged criminal conduct occurred." *Id.* at ¶ 21, 23. The court explained that the prospective application of R.C. 2901.05, as amended, was clear from the "plain language" of the statute, i.e., "*at the trial* of a person who is accused of an offense that involved the person's use of force against another * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *." (Emphasis added.) *Id.* at ¶ 20; R.C. 2901.05(B)(1).

{¶ 134} Similarly, the plain language of R.C. 2901.09(C) indicates that it is to be applied prospectively to all trials conducted after its effective date, regardless of when the underlying alleged criminal conduct occurred: "*A trier of fact shall not consider* the possibility of retreat as a factor in determining whether or not a person

who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." (Emphasis added.) *See also* Comment to 2 *Ohio Jury Instructions*, Section CR 421.21 (Rev. Dec. 4, 2021) ("Because the General Assembly did not explicitly state whether R.C. 2901.09 applies to offenses that were committed before and tried after 4/6/21, the court must decide as a threshold matter whether amended R.C. 2901.09 applies as of the date of the trial or the date of the offense. Because the language in R.C. 2901.09(C) states what a trier of fact shall not consider, the Committee believes this amendment is applicable to all instructions given on and after 4/6/21."); *State v. Gloff*, 2020-Ohio-3143, 155 N.E.3d 42, ¶ 18, 28-29 (12th Dist.) ("It is well settled that a statute is presumed to apply prospectively unless expressly declared to be retroactive."), citing R.C. 1.48. Based on *Brooks* and the express language of R.C. 2901.09(C), I would apply R.C. 2901.09, as amended, in reviewing Miree's third assignment of error.[6]

{¶ 135} R.C. 2901.09(B) plainly states that "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(C) further states, "A trier of fact shall not

---

[6] In its appellate brief, the state does not specifically address the issue of whether the 2021 amendments to R.C. 2901.09 applied in this case. The state simply asserts that Miree "failed to preserve an objection" to the trial court's self-defense instructions and that any error in the jury instructions was harmless. With respect to the duty to retreat, the record reflects otherwise. *See* tr. 2477 ("[W]e renew our objection for Mr. Miree, on the duty to retreat language in the self-defense instruction."), 2651 ("[s]ame objections as before as to the * * * inclusion of the duty to retreat language, and the self-defense instruction").

consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." There was no dispute that the defendants were "in a place in which [they] lawfully ha[d] a right to be" at the time one or both defendants used force against Hurley. Accordingly, I would find that the trial court erred in instructing the jury that the defendants had a duty to retreat. Because the error in the trial court's instructions precluded the trial court from properly considering the defendants' claim of self-defense or defense of another, the error was prejudicial. Accordingly, I would sustain Miree's third assignment of error to the extent he claims that the trial court erred in instructing the jury regarding a duty to retreat, vacate Miree's convictions on Counts 2, 5 and 8 and remand for a new trial on those counts.